Marion Belle Barber, Appellee, v. Travelers' Insurance Company, Appellant.

Bert S. Barber, Appellee, v. Travelers' Insurance Company, Appellant.

Gen. Nos. 15,693—15,694.

1. INSURANCE—*when double indemnity recoverable under accident policy.* Where a policy provides for payment of double indemnity if injuries are sustained while riding as a passenger in any railway passenger car, double indemnity is properly recovered where the insured while a passenger accidentally fell from a moving car, although not attempting to enter or leave the same, and in consequence met his death on the road-bed.

2. CONTINUANCES—*when refusal to grant, error.* If a material witness is absent without fault upon the part of the party applying for a continuance, such party having exercised due diligence, and if the absence of such witness is attended with peculiar circum-

stances, it is an abuse of discretion, which will effect a reversal, to refuse to grant a continuance.

Appeals from the Municipal Court of Chicago; the Hon. Edward A. DICKER, Judge, presiding. Heard in this court at the October term, 1909. Reversed and remanded. Opinion filed November 2, 1911. Rehearing denied November 16, 1911.

FRANK M. COX and R. J. FELLINGHAM, for appellant.

WORTH E. CAYLOR, for appellees; WILLIAM G. WISE, of counsel.

MR. PRESIDING JUSTICE BROWN delivered the opinion of the court.

These causes were consolidated for hearing in the court below and in this court. Upon the same evidence (except in purely formal matters concerning the separate policies involved) a finding was made by the Municipal Court of Chicago, sitting without a jury, in favor of Marion Belle Barber against the Travelers Insurance Company, and a judgment entered on the finding for $5,270 and costs, and a like finding and judgment for the same amount against the same company in favor of Bert S. Barber.

Marion Belle Barber and Bert S. Barber were the children of Lyman W. Barber. Lyman W. Barber on July 10, 1907, took out two "accident" policies in the defendant company. They differed only in number and in the name of the beneficiary. In one the beneficiary named was Marion Belle Barber, in the other, Bert S. Barber. The terms of the policies, affecting these causes, follow:

"The Travelers Insurance Company of Hartford, Connecticut, does hereby insure Lyman W. Barber against bodily injuries effected directly and independently of all other causes through external, violent and accidental means as specified in the following schedule:

The principal sum of this Policy in the first year

is $2500, with 5% increase annually for ten years amounts to $3750.

\* \* \* \* \* \* \*

### SCHEDULE OF INDEMNITIES.

Part A. Single Indemnity—Death—Dismemberment and Loss of Sight.

If any one of the following disabilities shall result from such injuries alone within ninety days from the date of the accident, the Company will pay in lieu of other indemnity.

For Loss of Life other than specified in parts D. and E.

### The Principal Sum.

\* \* \* \* \* \* \*

In the event of death the principal sum insured shall be paid to (*Bert S. Barber in one policy—Marion Belle Barber in the other*), The Beneficiary if surviving, otherwise to the Executors, Administrators or Assigns of the Insured.

\* \* \* \* \* \* \*

The amount to be paid for claims under Parts A. and B. shall be double the sum specified in this Schedule if such injuries are sustained while riding as a passenger and being in or upon any railway passenger car using steam, cable or electricity as a motive power,

\* \* \* \* \* \* \*

but any accident or injury, fatal or otherwise, sustained while getting on or off or being upon the step or steps of any railway or street railway car shall be covered only by single indemnity.

\* \* \* \* \* \* \*

This insurance shall not cover disappearance or suicide, sane or insane, nor shall it cover accident, injury, death, loss of limb or sight or disability resulting wholly or partly, directly or indirectly, from intoxication or while intoxicated, \* \* \* or from voluntary exposure to unnecessary danger \* \* \* Nor (except as incident to the occupation of railway employes insured as such) shall this insurance cover accidents, injuries, death, loss of limb or sight, or disability, resulting directly or indirectly from entering or trying to enter or leave a moving conveyance

using steam as a motive power, (except cable and electric street cars), or happening while being in any part thereof not provided for occupation by passengers or while being on a railway bridge or road-bed.

 *  *  *  *  *  *  *

That all of the warranties following made by the insured upon acceptance of this policy are true, viz:

 *  *  *  *  *  *  *

M. My habits of life are correct and temperate.

 *  *  *  *  *  *  *

11. The warranties and provisions above are a part of the contract which is made subject thereto, and to the payment of the premium of Twelve and 50/100 Dollars.

The term of this Policy is Twelve months, beginning at twelve o'clock noon, standard time, on the 10th day of July, 1907, and ending at the same hour.''  * * *

There were the usual provisions in the policies as to notice and proofs of loss, but no question is made that all proper steps were taken by the plaintiffs thereunder and they do not, therefore, require transcription. The contentions in these causes are directly on the merits of the claims and not on technicalities.

Lyman W. Barber was last seen alive, so far as the evidence shows, on the front platform of the rear car of a train of the South Side Elevated Railroad in Chicago as it was leaving the Van Buren and Dearborn street station at 3:29 A. M., January 5, 1908, on a south-bound trip. His body was found at about seven o'clock that morning on the south-bound track of the Elevated Railroad where it runs through the station at 26th street. A coroner's jury found that he came to his death on January 5, 1908, ''from shock and injuries received by falling from the platform of the South Side Elevated R. R. Co. at 26th street, coming in contact with the Sprague (or third) rail, and then being run over by a train consisting of motor car No. 72 and coaches 376 and 323 belonging to the South Side Elevated R. R. Co. and south bound on their

Barber v. Travelers' Ins. Co., 165 Ill. App. 239.

tracks at the said 26th street station, on the early morning of Jan. 5, 1908. But from the testimony presented we, the jury, are unable to determine how or in what manner deceased met with said fall.''

The respective beneficiaries under the policies sued the Travelers Insurance Company on them in the Municipal Court in a case of the first class, alleging in the first count of their respective declarations that Lyman W. Barber ''was killed by receiving bodily injuries effected on the said 5th day of January, 1908, directly and independently of all other causes through external, violent and accidental means,'' by reason of which the defendant became liable to pay to the plaintiff upon said policy the sum of $2,500.

In the second count they alleged that the said Barber ''was killed while riding as a passenger and being in or upon a railway passenger car using electricity as a motive power by receiving bodily injuries effected on said 5th day of January, A. D. 1908, directly and independently of all other causes through external, violent and accidental means,'' by reason of which the defendant became liable to pay the plaintiff upon said policy the sum of $5,000.

The Insurance Company in each case filed six pleas to the declaration. On these pleas, which concluded to the country (inartificially, it appears to us, in the case of all but the first), issue was directly joined by similiters and the causes submitted to the court without a jury.

The first plea was the general issue; the second alleged a provision of the policy that it should not cover death resulting wholly, partially, directly or indirectly, from intoxication, and averred that the death of the assured resulted from intoxication, whereby plaintiff was barred from maintaining an action.

The third plea alleged a provision in the policy that it should not cover death resulting while the assured was intoxicated, and averred that the assured was killed while intoxicated.

The fourth plea recited the provision of the policy that it should not cover suicide, sane or insane, and averred that the death of the assured was caused by the assured wilfully and intentionally throwing himself upon the track of a railway and in front of a railway train operated by electricity, with the intent to destroy his life.

The fifth plea alleged the provision of the policy that it should not cover the death of the assured on a railway roadbed, and averred that the assured was killed while on a railway roadbed.

The sixth plea was made up of the recital that said policy provided that it should not cover the death of the assured resulting from voluntary exposure to unnecessary danger, and the allegation that the death of the assured resulted from voluntary exposure to unnecessary danger.

In the trial below and in this court the theory advanced by the plaintiffs as to the death of the insured was that he fell from the front or rear platform of the rear car of the train on which he was last seen alive, which he boarded at the Van Buren street station at half past three in the morning of January 5th; that he so fell as the train was leaving the 26th street station—the destination of the assured presumably being his home further south—that he fell on the deadly third rail and died instantly, or, if not, was killed by being afterward struck by the next southbound train. This, it is claimed, created a liability of the company for the double indemnity of $5,000.

The defendant's contentions (the defense of suicide and of unnecessary exposure to danger being abandoned) were: First, that the plaintiffs could not recover at all because the assured came to his death "while intoxicated," and indeed "wholly or partly, directly or indirectly" as the result of intoxication. Secondly, that as the evidence showed that the insured met his death upon a railway roadbed, the burden

Barber v. Travelers' Ins. Co., 165 Ill. App. 239.

was upon the plaintiffs to prove at least that he came upon that roadbed otherwise than voluntarily, and such proof, it is insisted, was not made. Thirdly, that there was no sufficient evidence in any event to warrant the double indemnity. There was a failure of proof, it is contended, that the deceased was killed "while riding as a passenger and being in or upon a railway passenger car," etc.

These last two grounds of defense we do not purpose to discuss further than to say that the arguments for the appellant have not convinced us that there was not sufficient competent and material circumstantial evidence brought forward to warrant a jury in finding for the plaintiffs on both the contentions indicated. If the assured, while a passenger, accidentally fell from a moving car (although not attempting to enter or leave the same), and in consequence met his death on the roadbed, we think that he was within the double indemnity clauses of the policies. No literalness of construction which would negative this is admissible.

And without expressing any opinion of our own on the conclusiveness of the proof in the trial below that the death of the assured happened in the manner and from the cause indicated, we say that there was, in our opinion, evidence so sufficiently *tending* to prove it, that we should not feel justified in disturbing the finding and judgment of the court based on it, were there no other factors in the situation to be considered. We refrain from the further discussion of this aspect of the cause, inasmuch as the disposition we feel obliged to make of it may require the matters indicated to be again submitted to a judge or jury. For, on the first ground of defense we cannot feel satisfied that the defendant had a fair trial, or that under the circumstances the finding and judgment can be sustained. The argument of the plaintiffs that there was no evidence to prove that the assured was not killed

"while intoxicated" (as to the provision of the policy concerning which another question involving literalness of construction might indeed arise), and especially no proof that the death of the assured was due "wholly, partly, directly or indirectly, to intoxication," convinces us as little as the argument of the defendant that there was no evidence that the death occurred while the assured was a passenger on a railway car.

The reasons for not discussing, in this opinion, the evidence in detail concerning the claimed intoxication of the assured on the night in question, are even stronger than those which dissuade us from elaborating on the other aspects of the matter. We have not overlooked the direct testimony of the companions of the assured, on which the plaintiffs so confidently rely; but, again, we must give to circumstantial evidence its due weight. It seems to us idle to say that there is nothing tending to prove intoxication in the evidence concerning the actions of the assured from his entrance into a dram-shop at six o'clock in the evening of January 4th, to the time that at half past three in the morning, at the end of a two mile drive in a cab away from the direction of his home, he came to the doors of a down town building, with the apparent intention of climbing the stairs to his office on the tenth floor, and was persuaded by his companion to abandon the undertaking and go home. Some of the actions and some of the conditions described in that evidence point so clearly to intoxication, greatly increasing the danger of riding on the platform of an elevated train, that we cannot conscientiously say that, in our opinion, it is overborne or even offset by the evidence of those who were with him or saw him during that night, and whose opinion of his sobriety was called out to aid the plaintiffs.

We should be more reluctant, however, to send this cause back to be retried—less reluctant to accept as final the finding of the learned judge below—were we

not of the opinion also that the defendant was placed at a great disadvantage in the trial of this cause by the absence of the witness, Mildred Shippy, who could not have failed to be of material assistance to the court in the proper determination of the issue of the assured's alleged intoxication. This absence was not in any respect the fault of the defendant, who had used all due diligence to secure her attendance. It was accompanied by circumstances concerning connections and communications between her and a friend of the assured which could not fail to strike any court as remarkable. We think the case should, on the application of the defendant, have been continued for the testimony of this witness. We do not think it was within the proper limits of the trial judge's discretion to refuse the application, and we feel that the cause should not have proceeded to judgment until the much longer time which would be afforded by a continuance had been granted to find and bring this missing witness into court or before a magistrate who might take her deposition. And most of the sane considerations, forceful in a less degree only because she had not been actually subpoenaed by the defendant, are involved in the absence of another material witness, Irma Palmer.

We think the judgments in each case should be reversed and the cause remanded for a new trial. It is so ordered.

*Reversed and remanded.*